IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL THOMAS LANAHAN, #345-275    *
        Plaintiff
   v.                                *   CIVIL ACTION NO. AW-09-3207

PATUXENT INSTITUTION, et al.,    *
        Defendants
                                   ***

MEMORANDUM OPINION

Pending are Defendants Correctional Medical Services Inc.'s and Patuxent Institution's Motions to Dismiss or for Summary Judgment[1] (ECF Nos. 17 and 24), which are unopposed.[2] Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

**Background**

Plaintiff alleges that on August 15, 2009, he was in his cell when he had a severe "mental episode" wherein he saw things in a "flash back of settled insanity." He threw his bunk into a porcelain toilet, breaking it into pieces. He states he fastened a shirt with rocks in it and told officers not to enter his cell, that he wanted to speak with military officers from the Special Forces. After a three hour stand-off, Plaintiff states that the "riot squad" was sent to his cell. During the cell extraction, mace was used and a sharp piece of porcelain was pushed into his neck by the shields held by correctional officers. Plaintiff states that he was taken to shock trauma by bus rather than by ambulance and was injected with excessive amounts of medication. Plaintiff further alleges that

---

[1] Mental Health Management Co. has not been properly served with the Complaint. For the reasons that follow, even if the corporation had been properly served, Plaintiff's complaint against it would be subject to dismissal.

[2] Plaintiff was given the requisite notice and an opportunity to oppose the dispositive motion in compliance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and has failed to do so.

he has not been prescribed the proper medication to treat his post traumatic stress disorder. ECF No. 1.

In response, Defendants assert that on August 15, 2009, at approximately 4:50 a.m., Plaintiff barricaded himself in his cell with his bed and tied the door to the bars with a Division of Correction (DOC) shirt. He also shattered the porcelain toilet and was wielding a shard of the porcelain as a weapon. He used the piece of porcelain to cut the left side of his neck, left wrists and right forearm. He also brandished the toilet pipe as a weapon. He was agitated and delusional, exhibiting paranoid thoughts as well as auditory, visual and olfactory hallucinations. ECF No. 24, Ex. 2.

Lt. Wilmering responded to the disturbance, untied the bars, and directed Plaintiff to move his bed and step to the cell door to be handcuffed. Plaintiff refused. The shift commander and Warden were notified of the disturbance and the use of force was authorized if Plaintiff did not comply with orders to leave his cell voluntarily. Over the next several hours Wilmering endeavored to have Plaintiff leave the cell voluntarily, but Plaintiff refused. *Id*.

At 8:00 a.m. a cell extraction team was formed. Plaintiff was given a final order to comply and be handcuffed which he refused. A chemical agent was dispensed into the cell and the extraction team entered the cell. Members of the team held the shield and secured each of Plaintiff's limbs. Plaintiff was taken to the floor and leg irons were secured. Due to the confined space of the cell and Plaintiff's continued resistance, handcuffs could not be fully secured so Plaintiff was brought into the corridor where the handcuffs were fully secured. *Id*.

Nurse Tracy Wilson administered two injections of sedatives Haldol, Benadryl and Ativan as prescribed by Patuxent psychiatrist Dr. Hong. The doses were within the therapeutic range and not enough to cause Plaintiff permanent adverse effects. ECF No. 17, Ex. A. Wilson also checked

2

Plaintiff's self-inflicted wounds and advised that Plaintiff needed to go to the dispensary for further treatment. Plaintiff was transported by wheelchair due to the effects of the sedating medications. In the dispensary Plaintiff's vital signs and wounds were evaluated. He was given a shower and placed in the Acute Mental Health Unit where his wounds were cleaned, closed and covered with dressings. He was then transported the University of Maryland Medical Center Shock Trauma Center[3] where his wrist was sutured and a bronchoscopy was performed to evaluate for internal damage from the neck wound. The neck wound did not require suturing. *Id*., Ex. 3., ECF No. 17, Ex. A.

Upon his discharge from the hospital, Plaintiff was admitted to the Jessup Regional Hospital for further observation and treatment. After six hours he was transferred back to the AMHU. Augmentin was prescribed to prevent infection. Haldol, Benadryl and Ativan were prescribed in the event of severe agitation. On August 16, 2009, at approximately 9:00 p.m., Plaintiff exhibited severely agitated and psychotic behaviors and as such received a dose of those medications at that time. Plaintiff's wounds healed without complication. His mental health disorder is managed by psychiatrists at the Patuxent Institution.[4] ECF No. 17, Ex. A.

**Standard of Review**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127

---

[3] Plaintiff's vital signs were stable and as such he did not need to be transported by ambulance. ECF No. 17, Ex. A.
[4] Plaintiff's ongoing mental health care is currently before the Court *in Lanahan v. Eastern Correctional Institution*, et al., Civil Action No. AW-09-3207 (D. Md. 2009).

S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses

from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

**Respondeat Superior**

Plaintiff's complaint against Correctional Medical Services, Inc. and Mental Health Management Co. is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Correctional Medical Services, Inc. and Mental Health Management Co. that resulted in a constitutional injury, and accordingly, his claims against them shall be dismissed.

**Medical Care**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of medical personnel or other defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff has failed to demonstrate that he has been denied medical care. Medical records indicate that Plaintiff was treated promptly with anti-psychotic, sedative, and anti-anxiety medications when he underwent a psychiatric episode. He was promptly evaluated by medical staff and his self-inflicted injuries treated on site. Given that his vital signs were stable he was transported in a non-emergency vehicle to the hospital for further treatment and evaluation. Upon his return to the institution he was provided further follow up care and remains under psychiatric care. The record evidence demonstrates that the medications prescribed to him are within appropriate therapeutic levels and that his preferred medication, i.e. narcotics, are not warranted for treatment of his psychiatric disorder. The medical records along with the affidavits refute Plaintiff's assertions that he was denied adequate care. Stated simply, Plaintiff's bald allegations of denial of medical care amount to little more than a disagreement with the judgment of his health care providers. Such disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).

**Excessive Force**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 130 S. Ct. at 1177.

Defendant Patuxent Institution denies that the force used to prevent Plaintiff from further self harm was excessive. Defendant explains that the force used was minimal and was undertaken in order to keep the facility secure. Moreover, the force used was necessary in order to stop Plaintiff from self-harm, including a suicide attempt. Additionally, the force was tempered in that Plaintiff was given an opportunity to comply with lawful orders before the cell extraction team entered Plaintiff's cell, in fact, officers spent over three hours negotiating with Plaintiff for his peaceful compliance. Unfortunately, Plaintiff was in the midst of a psychiatric episode and could not be reasoned with. Plaintiff was immediately taken for medical attention where he was permitted to wash off the chemical agent and only self inflicted injuries were noted. In light of the foregoing, Defendants are entitled to summary judgment.

## Conclusion

In light of the above analysis, Defendants' Motions to Dismiss or for Summary Judgment shall be granted as to all claims. Plaintiff's complaint against Mental Health Management Co. shall be dismissed. A separate order follows.


Date: February 25, 2011                    _____/s/_____
                                           Alexander Williams, Jr.
                                           United States District Judge